J-S43033-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| RANDI KOPP | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAWN MCCARTHY | : | |
| | : | |
| Appellant | : | No. 502 MDA 2023 |

Appeal from the Order Entered March 2, 2023
In the Court of Common Pleas of Lebanon County
Domestic Relations at No(s):  2010-5-0505

BEFORE:   McLAUGHLIN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:          **FILED: JULY 19, 2024**

Shawn McCarthy appeals from the March 2, 2023 order finding him in both civil and criminal contempt. Said order stems from both McCarthy's noncompliance with his existing child support obligations as well as his failure to appear at prior civil contempt hearings.[1] On appeal, McCarthy argues that he was denied the right to counsel when, following a hearing in which he appeared *pro se*, the lower court found him in civil contempt and sentenced him to a corresponding term of imprisonment. Moreover, McCarthy contends

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] After finding McCarthy in civil contempt due to him missing child support payments, the lower court sentenced him to five months of incarceration. As to its finding of criminal contempt, predicated on McCarthy failing to appear in court on four separate occasions and a bench warrant being issued, the lower court sentenced McCarthy to a consecutive seventy-five days of incarceration. McCarthy does not challenge the court's finding of criminal contempt on appeal.

that the court abused its discretion when it set a $2,000 "purge of contempt" condition without first making inquiry into, and determining beyond a reasonable doubt, his ability to pay such a condition. We vacate and remand.

Briefly, McCarthy is the biological father of two children, a child support petition was filed in 2010 by the children's biological mother, and a support order was established in 2012. Numerous contempt petitions were filed against McCarthy in the ensuing years. McCarthy was also incarcerated at various points during that same time period, leading to several suspensions in his child support obligations.

In February 2022, the Domestic Relations Office of Lebanon County ("DRO") filed the currently at-issue contempt petition. McCarthy failed to appear, leading to a bench warrant being issued. Ultimately, McCarthy was brought before the lower court in February 2023 for a contempt hearing. At that hearing, which featured no discussion as to his right to counsel or any indication that he waived such a right, McCarthy appeared *pro se*.

Although McCarthy, in his defense as to nonpayment of child support, claimed to have kidney cancer, be on short-term disability through his work insurance, and had additionally spent some of the preceding time in jail, **see** N.T., 2/28/23, at 3, the court found that McCarthy "completely ignored his child support obligations[.]" **Id**., at 8 (basing its decision, at least in part, on McCarthy's lack of "documentation to corroborate [his] claim of disability[]"). Resultantly, McCarthy was sentenced to the abovementioned consecutive terms of incarcerations, but pursuant to the court's order, was allowed to

purge himself of the civil contempt finding through a payment of $2,000.[2]

The Lebanon County Public Defender's Office entered its appearance on behalf of McCarthy following the court's decision and timely appealed the lower court's order. McCarthy thereafter timely filed a statement of matters complained of on appeal and now presents two questions for our review, which we have reordered for ease of disposition:

1. Did the lower court err when it incarcerated McCarthy for civil contempt without either providing him with counsel or obtaining a knowing, intelligent, and voluntary waiver of that right?

2. Did the lower court err when it gave McCarthy a purge condition of $2,000 where the record did not support beyond a reasonable doubt that McCarthy had the present ability to comply?

**See** Appellant's Brief, at 4.

McCarthy avers that his due process "rights were violated when he was incarcerated without the opportunity to demonstrate his need for appointed counsel nor given the opportunity to waive his right to counsel." Appellant's Brief, at 8. In support, McCarthy cites **Commonwealth v. Diaz** for the proposition that "an indigent defendant's right to court-appointed counsel is triggered in *any* proceeding in which the court finds there is a likelihood of imprisonment." 191 A.3d 851, 861 (Pa. Super. 2018) (emphasis added). Here,

---

[2] As of the time of the hearing, McCarthy owed $9,981 in child support. **See** N.T., 2/28/23, at 5. Although its rationale is unclear, the court set McCarthy's purge amount at approximately 20% of that outstanding balance.

J-S43033-23

McCarthy

> was not represented by counsel at his contempt hearing. No one provided him with a form designed to elicit information about his financial circumstances. … McCarthy was not provided notice that the critical issue at the contempt hearing was the ability to pay. The plaintiff's attorney did not make an appearance at the contempt hearing. However, the [DRO], which is the entity opposing [McCarthy] in that [it is] the entity that filed the contempt petitions, was represented by Attorney John Gragson, Esq. … McCarthy was not advised that he could have an attorney present, he was not advised of the central legal issues that [the] court would be determining at the contempt hearing, and he was not colloquied for a waiver of counsel.

Appellant's Brief, at 19.

In response, the DRO claims that pursuant to **Turner v. Rogers**, 564 U.S. 431, 449 (2011) (holding that the 14th Amendment entitles an indigent contemnor to either counsel in a civil contempt proceeding or "the benefit of alternative procedures"), McCarthy, through the language contained in forms that were sent to him prior to the contempt hearing, was "provided the opportunity to seek counsel and an explanation of the importance of financial status as a possible defense to his contempt." Appellee's Brief, at 15. In essence, notwithstanding his lack of counsel or waiver thereof, McCarthy received substitute procedural safeguards that comported with the thrust of **Turner**. **See** 564 U.S. at 447-49.

In **Diaz**, this Court "declined to impose an automatic right to court-appointed counsel in all civil contempt proceedings." 191 A.3d at 862. However, as stated *supra*, we unambiguously held that "an indigent defendant's right to court-appointed counsel is triggered in any proceeding in

- 4 -

which the court finds there is a likelihood of imprisonment." ***Id***., at 862; ***see also*** Pa.R.Crim.P. 122(A)(1). Consequently, if, at a civil contempt hearing, the court determines there is a likelihood of incarceration, "the court *must* appoint counsel and permit counsel to confer with and advocate on behalf of the defendant at a subsequent hearing." ***Diaz***, 191 A.3d at 862 (emphasis added).[3]

Here, as evidenced, at least in part, by the sentence that he received, McCarthy faced a likelihood of incarceration for civil contempt. As such, he had a right to counsel under ***Diaz***, and there is no indicia of him waiving that right. Accordingly, the court erred in failing to appoint counsel. Notwithstanding the ***Diaz*** case arising from a failure to pay court fines rather than from a child support matter, the legal underpinning was the same: both this case and ***Diaz*** involved civil contempt proceedings where incarceration was likely. Therefore, we must vacate the finding of contempt and corresponding sentencing order and remand for the appointment of counsel and a new hearing.[4]

---

[3] As further background, ***Diaz*** involved a determination that an indigent defendant had a right to counsel in a civil contempt proceeding where that defendant was found in contempt for a failure to pay court-ordered fines and costs. ***See*** 191 A.3d at 852.

[4] As to McCarthy's second issue involving the court's abuse of discretion in having not made an inquiry into his ability to pay the set purge amount, we note the unsettled nature of authority in this domain. Most recently, this Court, in an unreported decision, concluded that "before a trial court may impose a
*(Footnote Continued Next Page)*

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/19/2024

---

purge condition in a civil contempt case, it must determine, beyond a reasonable doubt, that the contemnor has the ability to comply." ***Bredbenner v. Hall***, 2023 WL 5237495 at *3 (Pa. Super., Aug. 15, 2023) (unreported memorandum) (citations omitted). The implication of ***Bredbenner*** is that the onus is on the trial court to ascertain, beyond a reasonable doubt, a contemnor's ability to pay a purge condition. However, other unreported decisions have yielded converse outcomes regarding the interplay between a contemnor's burden of proof in demonstrating a present inability to pay and court's consideration thereof. ***See R.S. v. R.E.W.***, 2017 WL 657743 (Pa. Super., Feb. 17, 2017) (unreported memorandum). Should another purge amount be set following a subsequent contempt proceeding, McCarthy is free to reraise this issue at that juncture.